I won't get it wrong again. And I'd like to reserve three minutes for rebuttal. Yes, may it please the court, when does it get ridiculous, the District of Nevada dismissing these cases on either summary judgment or a motion to dismiss? I mean, especially with respect to the age count, age discrimination, and age harassment, I've been doing these cases for close to 30 years and I've never seen a better age case than this. I mean, we have a set of facts here where the State of Nevada, the Department of the Treasurer's Office, they gave my client no notice that she was doing anything wrong. There's no documentation, no emails, no write-ups, no anything. And then all of a sudden, they call her into a meeting and say she's terminated because they want to go in a different direction. Your client, am I correct, your client was an at-will employee? Yeah, they served at the pleasure of the Treasurer's Office. But typically, at-will employee means you don't need any reason to terminate them, but you can't terminate someone for an illegal reason, is that right? Correct. So you could terminate someone because you feel they're not really on the team of an elected official, you can terminate them because you just don't think they're a good colleague, you can't terminate them because of their age, or their race, or their religion, or other protected grounds. Yeah. And of course, you would agree, I mean, I think all your honors have done these cases before with respect to an employer is not going to say we terminated the person because of their age. I mean, they're going to come up with a different reason, but the fact that they didn't even have a reason initially and then come up with all these reasons, that's blatant, in my opinion, pretext. Well, it's not that the evidence is they didn't have a reason. The evidence is before they began the termination proceedings, they didn't tell your client they had a reason. Isn't that a difference? Well, yes. Yeah, but I mean, you would think, I mean, we're talking about a state agency. If anything, they should be over-documenting stuff, not under-documenting, and the fact that the prior treasurer did have something in Ms. Salaheen's file would indicate that they do document things. Well, some of them do, and I mean, they did not rely, and they're not relying here, other than in a footnote in their brief, on the problems the prior treasurer had, but some of those problems that Mr. Schwartz, the prior treasurer, had are some of the same ones they say they had, right? I'm looking specifically at SCR 5-8, Mr. Schwartz's January 10, 2017 letter, and it looks to me like some of the same types of things. Well, I mean, but that letter is not really relevant here because of the fact that it's a new treasurer and everything, but again, and Treasurer Schwartz did give her a letter of recommendation and whatnot, and so, but I mean, not only do you have that, but you have other evidence that I think, and again, we're on summary judgment, so could a jury find for the defendant, yeah, the jury could find for the defendant, but there's multiple pieces of evidence here that shows that it's reasonable for a jury to come to a conclusion in my client's favor, and for the court to say there just isn't enough evidence for a reasonable jury to come to that conclusion for my client, in my view, is just ridiculous. What evidence, there are two kinds of evidence, direct evidence and circumstantial evidence. As to direct evidence, what direct evidence is there that there was age discrimination? Well, I mean, in general, in all discriminations, it's going to have to be an inference. There is no, you know, there's no direct evidence. Are you claiming that Dixon's statement that we need new fresh faces here goes to the issue of age rather than personalities? Yeah, well, yeah, yeah, I mean, well, yeah, there's statements from, there's statements from, yeah, Miles Dixon that my client felt was age biased, but... She felt it was age biased, but objectively, can't one treasurer in a political position want fresh faces without being age biased? Yeah, but wouldn't you think that it's reasonable to come to the conclusion that those were biased because of her age? And on summary judgment, you're supposed to be looking at the evidence in favor of the non-moving party, so... What evidence can you point to as to pretext that they didn't really fire her because of her resistance to change, her inability to focus, her strategic plan was unintelligible, and she was unprofessional in her conduct towards workers? What contrary evidence was there to that? Well, there's pretext in the sense that none of that came about until after she filed with the EOC, after this litigation ensued. So employers, you know, they have to come up with the reason. So after the fact, they come up with the reason, such as that. And did you put in evidence to controvert that reason? Did I what? You put in evidence to controvert that reason. Yeah, I mean, that's in my brief. Maybe you could tell us about the evidence that you put in that controverts that proffered reason. That, well, I mean, there is on the reason there was a reason that there was declarations from or affidavits from three or four of the employees that they said that Ms. Salaheen was difficult with other employees or yelled at other employees, and there's affidavits to the contrary. I mean, two of the reasons are just kind of subjective things that they're saying, Miles Dixon and Zach Conine. So I mean, I don't know that there is any, I mean, that's just their opinion that she wasn't on board or she wasn't in step with where the treasurer wanted to go. Excuse me. I thought you had a declaration controverting that from Ms. Yates, who was her supervisor during the relevant time. Well, yeah, yeah, yeah. But I mean, I think, yeah, but they're saying that's just self-serving. But yeah, we do have that evidence, and that could, I mean, that's a good point. That can be believed by a jury, and again, on summary judgment, you're supposed to make all reasonable inferences from the non-moving party, so. So what evidence is there that she was fired because of her age? What is the, is it the comments that they made to her, one quoted by Judge Bea? What is your best evidence? Well, I think that, I think the fact that they replaced my client, who was 58 at the time, with somebody that was 38, and on the same day, they replaced her supervisor, who was 62, with somebody that was 30. They were the two oldest employees in the office. After Treasurer Conine took office, nine of 11 in the savings division were under 40 that were hired. I mean, there's, you know, together, there's quite a bit of evidence. In an age case, I mean, you have, you don't even have this much evidence in most age cases. I think you have a lot of evidence here to, again, to reasonably believe that it was because of age. Am I saying if a trier fact heard it, they might not agree with the treasurer's office? I'm not saying that. But that's not what we're here on today. We're here to see if it's reasonable to come to that conclusion. So, you know, I, and then on the age harassment, I mean, I think there's no less than, that was a separate cause of action. There's no less than 11 either comments or actions that were taken that arguably were harassing her because of her age. I mean, on age harassment, you're supposed to look at whether the environment is hostile to that person because of the protected class. I think, again, here, clearly, you could come to that conclusion on the evidence. The two other causes of action, I mean, I think those should also survive summary judgment. The termination based on the FMLA or the ADA, because I think they did, they had notice of that. And I think they... When did they have notice? While they had notice, I think it was October. I want to say... But haven't they submitted evidence that they started the termination proceedings by contacting the AG's office either in August or right around Labor Day? Yeah. But if you look at those emails and stuff, I think they're contained on the SIR 27 through 29. I mean, none of those really say that they were going to getting ready to terminate or they, you know... They wanted a template to put together a termination letter is what they've said, right? I... Well, they... What they've argued... Why? They've argued that the reason they were seeking the template from the AG's office was because they wanted to use that as the template for the termination letter for your client. Well, I... Where are you reading that? I didn't... I mean, they did say they were looking into severance and stuff like that, but I mean, these definitely are not emails that are direct on the point. I mean, if they were, they'd say, hey, we're looking to terminate Ms. Salahian and then the fact that they waited... So, to answer your question, what I'm looking at is the depot transcript of Miles Dixon at SER 101 and SER 118. And he... I don't have that in front of me, but he says... Well, what it says in his answer is there is an email, I believe, dated September 3rd in which the Attorney General's office provided us with a template of a separation agreement. Well, I mean, it seems their main evidence on that point is these emails, and I don't feel these really are direct on point as to the termination, but as to the fact... Did you want to reserve the rest of your time? Yeah, I'm going to... Yeah, that's what I was going to say. It's... Yeah, I'd like to reserve the rest of my time. All right. Thank you. Good morning. Good morning. May it please the Court, Alina Croft on behalf of the State of Nevada, Nevada State Treasurer's Office, and State Treasurer Zach Conine. I'd like to begin with the assumption underlying all of Appellant's claims in this matter, that in discrimination actions, the employer has the burden of proving that it has objectively correct cause for firing an at-will employee. That is not the correct standard in discrimination actions. This assumption flips the at-will employment relationship, which is at issue in this matter. Ms. Sully-Hinn was an unclassified employee of the State Treasurer's Office at the time of her termination in 2019. There was no obligation of a continuing employment relationship as the state has with classified employees. Her terms and conditions of employment are set by the State Treasurer's Office, which she serves at the will of the State Treasurer. Ergo, if her performance is not up to their satisfaction and she stops serving at the will of the State Treasurer, she will be terminated, which she was in this case. Ms. Croft, it seems to me that there were four specific reasons given by the Treasurer to terminate. And the question I have is whether there's any credible admissible evidence which rebutts them so that a triable issue of fact can be made as to whether those were the real reasons why she was fired rather than age discrimination. Let me take you through them. One is Sully-Hinn, I don't know if I pronounced this right, Sully-Hinn, was resistant to change and challenges. Right? That's one of the reasons they gave.  Now, her supervisor, Ms. Yates, I think that's how you pronounce her name, Yates, stated that while Yates was her direct supervisor for years, Sully-Hinn and her staff had made many changes and while Sully-Hinn was in charge of the program. So that would be some evidence contrary to the claim that she was resistant to change. You'll find that in paragraph 26 of Ms. Yates' affidavit. Doesn't that create an issue of fact as to whether she was resistant to change and therefore that that was a pretextual reason? No, it would not create an issue of genuine fact because that would not, that does not speak to the decision maker's thought process. Ms. Yates was her direct supervisor, but she was not the upper management who made the decision to terminate her. But it's circumstantial evidence that her supervisor vouches that she's able to handle changes and challenges. That's circumstantial evidence which was, could go to the decision maker's decision, could it not? It would not in this case and Ms. Yates was terminated at the same time as Ms. Sully-Hinn for a different but in a somewhat related reason because in management's viewpoint, they did not view that Ms. Yates was an effective supervisor of Ms. Sully-Hinn. Why does that matter? I mean, that would be a good argument to make to a jury, right? You could tell the jury, like, don't believe Yates, she has an ax to grind, she was fired at the same time, she's biased. But the district court doesn't get to make that kind of credibility assessment on summary judgment, does it? No, the district court would not make a credibility assessment, but in this, with this issue, that would not require a credibility assessment. The assessment here at summary judgment is whether plaintiff has presented specific and substantial circumstantial evidence of pretext. Right, but I think that the point of the passage from the declaration that Judge Bea read is that, you know, here's the, her direct supervisor is in a position to evaluate her work and sees the work, and if we, if we credit her statement, which a jury might not, but if we credit it, that seems to directly contradict the reason that the employer proffered for the termination, doesn't it? Just because it contradicts the reasoning does not create in itself a genuine issue of material fact. Why not? It would, it, again, it does not speak to the decision-maker's thought process. Well, but you never have, how do you ever have, like, you never have direct evidence of the decision-maker's process. You have other people who have observed what happened in the workplace, maybe they heard things that the, you might have heard things that the decision-maker said, but that may or may not be a true reflection of their decision-making process internally. All you ever have is, in some sense, circumstantial evidence, and this, again, seems like very strong circumstantial evidence, isn't it? We would say no because it is not specific nor substantial, which is the standard for indirect circumstantial evidence. Let me take you to another issue that was raised, that she was unprofessional in her conduct to co-workers. Ms. Yates in her affidavit, paragraph 17, ER 152-3, says, Yates never witnessed any such conduct while Yates was her supervisor. That's a direct conflict regarding the treatment of staff, isn't it? Why doesn't that create a tribal issue of fact as a pretext? It would not in this case, again, going back to the issue that Ms. Yates and her affidavit and the fact that she stays within, I mean, Ms. Yates was terminated at the same time, but to a point— Well, you're saying that since Yates was terminated at the same time, she's probably biased in favor of Ms. Salih, and that's an issue that you can bring up at trial. It goes to the weight of her testimony, but it doesn't go to the fact that it creates a conflict in the evidence. But there are also other, as you pointed out, there are four reasons for her termination, and if— Yes, there is. As a matter of fact, they also say that Sahanian's strategic plan was unintelligible and was  unintelligible, and when Corrine, Conine, and Dixon told Sahanian she was fired, Sahanian asked why. This is in Yates's declaration. And Corrine and Dixon said nothing more than, we're going in a different direction. That's all they said. They didn't say anything similar to what they're saying now. So aren't these all tribal issues of fact as to why they really got—why they terminated Ms. Sahanian? Well, with regards to what was said at Ms. Salihian's termination, the statement, we're going in a different direction, that is not necessarily a reason given for termination. This is not a situation of— Then why did they say it? This is the diplomatic statement. It is an at-will employee— Diplomacy is the action that civilized people take to turn people down. Fair point. But at the same time, that statement by itself, it is no reason at all. It is simply an acknowledgment that you're an at-will employee and that you are no longer serving at the pleasure of the state treasurer. But they didn't tell her that her strategic plan was unintelligible and terrible and give her a chance to explain herself. They just said, we're going in a different direction. And lastly, she's accused of being unable to focus. But again, Yates says that Dixon, the treasurer's chief of staff, had asked Sahanian for reports, input, and information. But Sahanian had to wait months for feedback from Dixon, unlike the feedback from Dixon to male employees, which came much sooner. Now, it wasn't her failure to focus. It was a failure to be told that her reports were somehow not good. Now, does that create a triable issue of fact? No, it would not in this case, simply because the burden of persuasion remains with the plaintiff at all times. The burden is not on the employer to show that it actually had good cause for termination of an at-will employee. I couldn't agree with you more. The burden of persuasion is on the plaintiff at trial. But at summary judgment, the burden is to produce evidence which creates a triable issue of fact. That's a different burden. Once the employer states a legitimate reason for the termination, which opponent concedes that it did? If it's legitimate. Which opponent concedes that it is legitimate, that a legitimate reason was preferred, there were four different reasons which you have iterated. But I take it that part of your argument also is that when dealing with an at-will employee who serves at the pleasure of the treasurer, just wanting somebody new in the office is a good enough reason. That would be a good enough reason, correct? Especially in this matter, because it brings up, emphasizes the point that there is no documentation of prior performance issues. One, just discussed, there doesn't have to be for an at-will employee. But also as per. Is just wanting someone new one of the reasons that you've proffered, like in the context of this litigation, as satisfying step two of McDonnell Douglas? I did not understand that to be one of the reasons that you had told the district court. That would be, no, that would be a general reason for terminating an at-will relationship. I thought part of your reason was sort of a variant of what I said was this is a political appointee, I mean a political, an elected official and the office wanted to go in a new direction. Wasn't that one of the reasons that you argued that you did want to go in a new direction? That was the statement given to Ms. Salikian at the date of her termination, October 28, 2019. Again, that would not strictly be a reason for termination given, because you do not have to give a reason at termination of an at-will employee. As we established, we have deposition testimony confirming that the state treasurer's office in saying that was acting on advice given to them by legal counsel. But at the same time, the issue here is whether the appointees have established that they have substantial and specific evidence, circumstantial evidence of pretext and none of the other piece of evidence that they've offered come close to that individually and when considered cumulatively. But I would also point out that because the reason for termination or the non-reason for termination given on October 28 was we are going in a different direction, it does not constitute a shift in employer's justification, as in cases where that they pull in sites where there are instances where the employer does not say that the performance issue was at play at termination. And then when an ESC charge is filed, they said there are performance issues. And then when litigation comes around, there's more issues on top of that. This is not a situation like this. This is a non-reason given. And then there's no reason to call into doubt that the reason wasn't valid. And the burden is not an employer to show that the reason was actually true. It does not even have to be objectively correct. They have to show that the employer did not actually believe that to be true at time of termination, and they have not presented any substantial or specific evidence to that effect. And just to conclude, because I'm running short on time, you know, Lindahl v. Air France states that a plaintiff cannot defeat summary judgment simply because they make a prima facie case and intend to attack the credibility of the employer's witnesses on cross-examination. That is exactly what they're trying to do here. And again, it is not sufficient to defeat summary judgment, which was properly granted in this case and should be affirmed. Thank you. Thank you. Counselor, you have a few minutes left. Yeah. Yes, just a few points, Your Honors. And, you know, you did pick up on Ms. Yates' affidavit. I mean, it's interesting that the district court, in their order on page 10, lines 12 and 13, says Ms. Yates was fired by the same decision makers, suggesting her work performance was similarly unsatisfactory to Treasurer Conine's and his executive team. I mean, a judge on summary judgment is not supposed to be assessing the credibility of witnesses. Clearly here, that's what the judge is doing and saying basically Ms. Yates is not credible, but that's not for the judge to say. Also, I mean, the judge actually found as to the pretext, I don't really understand it, but she says on page 11, lines 14, or lines 15 and 16, while the lack of documentation here supports a finding of pretext in general, in a general sense, I don't know what that, you know, she's even saying that general, so I think she was even not clear on whether summary judgment should be granted here or not. So, I mean, I just think overall there, and your honors brought it out, I think that there is, you know, whether you want to believe the evidence or not is for the jury. It's not for the judge on summary judgment to decide. I mean, my client, I've been doing this for years. She is a top-notch employee, and I wouldn't just say that. I've dealt with numbers of employees over the years, and in Nevada, as in other states, employees have the right to, employment discrimination and employee's rights is not just something that should be swept under the table, and summary judgment or motions to dismiss granted in every case. This case is worthy of a trial. Ms. Salihian deserves a trial in this matter. I think definitely on the age discrimination, age harassment issues, and I think also the other issues, but the strongest clearly are... Why don't you conclude, counsel? Yeah, so with that, I conclude and submit on... All right, we thank both counsel for their arguments, and the case just argued is submitted. Okay. Thank you.
judges: BEA, BENNETT, MILLER